[No. 6911–1.   Division One.   July 23, 1979.]

*In the Matter of the Marriage of* GEORGE F. OSBORN,
JR., *Respondent, and* JOAN BESS OSBORN,
*Appellant.*

*Siderius, Lonergan & Crowley* and *David C. Pearson,* for appellant.

*Sawyer & Foshaug* and *William Michael Foshaug,* for respondent.

*Stephen M. Gaddis, Josephine Vestal,* and *Barbara A. Bintliff* on behalf of Children's Legal Services, amici curiae.

JAMES, J.—Joan Osborn appeals from a decree of dissolution entered on October 3, 1977, awarding her and George Osborn joint custody of their two minor children, and from a decree entered on August 30, 1978, denying her motion to modify and ordering that joint custody be continued.

The parties were married on January 25, 1969. In 1976, both petitioned for dissolution of marriage. A decree of dissolution was entered on October 3, 1977, awarding them joint custody of the two minor children with the wife being the primary custodial parent. On May 1, 1978, Joan Osborn moved to modify the joint custody provisions of the decree of dissolution in order to permit her to move with the children to Jesup, Iowa. In denying her motion, the trial judge entered the following findings of fact and conclusions of law:

2.

[A] trial was held for Dissolution of Marriage on May 27, 1977, at which time a dissolution was granted, property and community obligations divided and the Court decided that it was in the best interest of the children and in accordance with their best welfare that joint custody be granted to the parties herein.

3.

[T]here are cultural and educational advantages in the Seattle area which cannot be found in Jesup, Iowa.

4.

[T]he extended family on both sides resides in the Seattle area and are close emotionally to each other and the children of the parties.

5.

[T]he ex–wife and the children reside in a nice, comfortable family residence on Queen Anne Hill with the parochial school where the children attend less than two blocks away and the wife's mother is available for babysitting residing less than two blocks away from the family residence. The ex–wife and children would be housed in a parish house in Jesup, Iowa.

6.

[T]here is no significant economic benefit nor job oriented advancement to be gained by a move to Jesup, Iowa. . . . [F]or these reasons it is in the best interest of the children and in accord with their best welfare that the children stay in the Seattle Area in the family home.

7.

[T]he father has cooperated and participated in both the spirit and the letter of joint custody. . . . [T]he father serves as a valuable source of input and guidance into the life of his children and serves a valuable role model for them and . . . the likelihood of this input and the continuation of his close relationship with his children depend upon joint custody.

8.

For the reasons indicated above it is in the best interest of the children and in accord with their best welfare that joint custody continue.

The trial judge also ordered that joint custody be continued and that "should the wife move out of the family home and the area of Seattle, the husband shall take over temporarily the physical custody of said children, and reside in the family residence."

■ Joan Osborn initially challenges the award of joint custody made in the decree of dissolution entered on October 3, 1977. The record indicates, however, that she did not file a notice of appeal from the decree of dissolution until September 8, 1978, more than 30 days after entry of the final judgment. Accordingly, her appeal was untimely. RAP

5.2(a). Although she timely appealed from the decree denying her motion to modify, an appeal from this final order did not bring up for review the judgment previously entered. *Rhodes v. D & D Enterprises, Inc.,* 16 Wn. App. 175, 554 P.2d 390 (1976); *Nestegard v. Investment Exch. Corp.,* 5 Wn. App. 618, 489 P.2d 1142 (1971); 2A L. Orland, Wash. Prac. § 3074 (1978). Therefore, the decree of dissolution which awarded joint custody is binding on both parties and cannot be challenged on appeal. *See Schuster v. Schuster,* 90 Wn.2d 626, 585 P.2d 130 (1978).

Joan Osborn contends that the trial judge erred in denying her motion to modify, thereby prohibiting her from moving with her children from the state of Washington to Jesup, Iowa. We do not agree. The trial judge heard the testimony of the parties and determined that in the best interest of the children joint custody should be continued. In his oral opinion, the judge stated:

> Now, she wants to move to Iowa taking the children with her. The question before the court is would that be in the best interests of the children. The court has to examine the surrounding circumstances, weigh the testimony and evidence, in making that determination.
>
> What do we have here in Seattle where they now live. Close relatives, comfortable home, they are in a parochial school, Catholic school, the father is near, he wants to give any care and guidance, spiritual or otherwise that he can, the children are happy to see their father, they are happy to see their mother. So, they sort of have the best of both worlds. . . . [J]oint custody is good if you have cooperative and agreeable people to make it work. We have one who says he would like to make it work. He thinks it has been moderately successful. It has had its hitches and could work better. We have another, Mrs. Osborn, who says that she doesn't like it, doesn't think it works, and she feels communication might be a primary problem.
>
> What do we have in Jesup. Well, we have Father Pitzen who has a parish of some four hundred people. He has a tenure of five years. He has one year to go. He has put four years in. He thinks that in all likelihood, in all probability, he will not be reassigned but he admits quite

candidly that the final decision is not up to him, it's up to the personnel board, and if worse comes to worse he could be reassigned. What happens to Mrs. Osborn. Does she have any job tenure? Apparently not. The incoming priest would have the option of bringing in his own housekeeper leaving her without any job security and without any job.

Now, do you want to take two children, eight and five, and move them into a situation like that where at best at this particular point in time you would have to characterize it as being unsettled or do you want to leave the situation as is where you know that the environment is conducive to the spiritual growth and spiritual welfare and wellbeing. The question comes up, on a proper showing, certainly the primary custodial parent can move to better her conditions economically and otherwise and the court has no quarrel with that basic proposition. I think it is correct. But the question becomes, has a proper showing been made at this time that this would be to her economic betterment. The court feels that it is not convinced at this time that it would be to her economic betterment. I think things are too unclear. Here she has four hundred a month child support, she has a home, she has a job, possibilities of advancement. . . .

Counsel, the court would have to conclude that it is not in [the children's] best interests. I would have to deny the petition.

■ In reviewing the record, we find substantial evidence to support the trial judge's decision. Although Joan Osborn testified that a move to Jesup, Iowa, would enable her to be a full–time mother to the children and that in addition to the $300 a month she would be paid as housekeeper she would receive additional income from renting her present home in Seattle, the trial judge could conclude that she did not demonstrate sufficient economic benefit to justify a move. The determination of whether to modify a decree of dissolution is a matter vested within the sound discretion of the trial judge and based upon the record before us we cannot determine that no reasonable person would have ruled as he did or that he exercised his discretion on

untenable grounds. Accordingly, we find no abuse of discretion.

Neither party is awarded attorney's fees on appeal.

Affirmed.

SWANSON, A.C.J., and RINGOLD, J., concur.